

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ALB:SK/JAM
F.#2016R01828

*610 Federal Plaza*
*Central Islip, New York 11722*

April 18, 2017

<u>By ECF & Hand</u>

The Honorable Arthur D. Spatt
Senior United States District Court Judge
Eastern District of New York
1024 Federal Plaza
Central Islip, New York 11722

    Re:  United States v. Elvis Redzepagic
       <u>Docket No. 17-M-199 (SIL) (ADS)</u>

Dear Judge Spatt:

    The government respectfully submits this letter motion to quash the defendant Elvis Redzepagic's <u>ex</u> <u>parte</u> subpoenas to the Suffolk County Police Department ("SCPD") in the above-referenced case.  As there is not yet an indictment in this matter, the government submits this motion to Your Honor as miscellaneous district judge.

I.   <u>Background</u>

    The defendant Elvis Redzepagic has been charged in a criminal complaint with attempting to provide material support to one or more foreign terrorist organizations — specifically, the Islamic State of Iraq and al-Sham ("ISIS") and the al-Nusrah Front.  ECF No. 1, attached hereto as Exhibit A.  The charged offense arises from the defendant's attempts to travel to the Middle East in 2015 and 2016 to enter Syria and wage violent jihad. Law enforcement agents arrested the defendant on March 3, 2017, and the duty magistrates at presentment and at a subsequent detention hearing ordered him detained pending indictment and trial.  The government's investigation is ongoing.

    On several occasions after the defendant's arrest — on March 4, March 5, and March 20 — defense counsel expressly requested, or otherwise sought to elicit, pre-indictment discovery from the government.  Each time, the government explained that it would provide discovery pursuant to Federal Rule of Criminal Procedure 16, in the ordinary course, after any indictment in this case.  In sensitive national security matters such as this one, the government commonly provides discovery after indictment pursuant to a protective order in order to prevent the unrestricted dissemination of discovery materials that are sensitive because they relate to a national security investigation, reveal the identity of victims

and witnesses and the nature of their statements, reveal the identity of others who may be providing material support to a foreign terrorist organization or attempting or conspiring to do so, and reveal the sources and methods by which the government obtains evidence and information in national security matters.

The government has learned that on March 7 and March 13, defense counsel — the Federal Defenders of New York — served the SCPD with three subpoenas related to this case, with advance copies by fax, attached hereto as Exhibit B, and signed copies by hand delivery, attached hereto as Exhibit C. SCPD has not yet responded to the subpoenas. The subpoenas call for the production of:

- "Any and all radio runs, 911 tapes, dispatch transmissions and any other recordings, written, audio or video regarding [a] 911 call placed by complainant [redacted name] from [redacted telephone number] to respond to [redacted address] in February 2017";

- "All police contact at the following location: [redacted address]. Include any arrest reports, case/incident and supplemental reports"; and

- "Any and all radio runs, 911 tapes, dispatch transmissions and any other recordings, written, audio or video regarding: 1. Call placed by complainant [redacted name] from [redacted telephone number] to respond to [redacted address] in February 2017; 2. The subsequent arrest of Elvis Redzepagic."

The redacted names reference witnesses to the defendant's conduct.

These wide-ranging requests encompass material that will be produced in post-indictment Rule 16 discovery pursuant to a protective order as well as material that is expressly excluded from such discovery under the Federal Rules of Criminal Procedure and the Jencks Act. The requests therefore represent an unabashed effort by defense counsel to circumvent the ordinary criminal discovery process and the limits set forth in the rules. The requests further run afoul of well-established principles governing Rule 17 subpoenas.

II.     Argument

    A.     Applicable Law

The use of Rule 17 subpoenas in criminal cases is governed by the Supreme Court's decision in United States v. Nixon, 418 U.S. 683 (1974). The Nixon Court principally recognized that the Rule 17 subpoena "was not intended to provide a means of discovery for criminal cases." Nixon, 418 U.S. at 698. It therefore held that, in order to require production of materials prior to trial, the moving party must show:

> (1) that the documents are <u>evidentiary</u> and relevant; (2) that they are <u>not otherwise procurable</u> reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

<u>Id.</u> at 699-700 (emphasis added) (citing <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 220 (1951)). The Supreme Court specified that, "[a]gainst this background," the subpoena proponent must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." <u>Id.</u> at 700.

As this Court held recently, this principle "is well-established that a court must quash a subpoena that does not seek evidence that is 'evidentiary or relevant.'" <u>United States v. Walsh</u>, 15-CR-091, ECF No. 31 at 3 (E.D.N.Y. Sept. 18, 2015) (Spatt, J.) (quashing so-ordered subpoena for personnel file) (citing <u>Nixon</u>, 418 U.S. at 698 and <u>United States v. Khan</u>, No. 06-CR-255, 2009 WL 152582, at *1 (E.D.N.Y. Jan. 20, 2009) (Irizarry, J.)).

In keeping with these principles, courts have consistently required that a party's subpoena "must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hop[e] that something useful will turn up." <u>United States v. Louis</u>, No. 04-CR-203, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (alteration in original) (internal quotation marks and citation omitted). Thus, courts have found that "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by <u>Nixon</u>." <u>United States v. Mendinueta-Ibarro</u>, 956 F. Supp. 2d 511, at 515 (S.D.N.Y. 2013) (quashing defendant subpoena under <u>Nixon</u> because subpoena seeking "any and all documents" from local law enforcement relating to an investigation lacked requisite specificity and requested materials that may never be admissible and were statutorily protected from pre-trial disclosure); <u>see also United States v. Chen De Yian</u>, No. 94-CR-719, 1995 WL 614563, at *2 (S.D.N.Y. Jan. 6, 2000) (granting government's motion to quash defendant's subpoena to county sheriff's department asking for "'all records, including . . . documents, memoranda, reports, notes . . . pertaining to'" the investigation of charged deaths because subpoena not crafted to call for admissible evidence and because request for entire investigative file was "accurately described as a fishing expedition"); <u>Louis</u>, 2005 WL 180885, at *5 (quashing defendant's subpoena on the basis that it constituted a fishing expedition because it sought "'any and all' documents related to several categories of subject matter (some of them quite large), rather than specific evidentiary items, thus clearly indicating that Defendant [sought] to obtain information helpful to the

defense by examining large quantities of documents"); United States v. McDonald, No. 1:10-CR-29, 2010 WL 1734773, at *4 (E.D. Va. Apr. 26, 2010) (granting government's motion to quash defendant's subpoenas seeking "'[a]ny and all records notes, reports, memorandum, and/or documents and things in any form maintained by' Detective Woods of the Arlington County Police Department and the Arlington County Victim/Witness Program regarding Kyle Matthew McDonald" as insufficiently specific and constituting a fishing expedition); United States v. McDonald, 444 F. App'x 710, 711-12 (4th Cir. 2011) (upholding district court's decision to quash defendant's subpoenas to local law enforcement because subpoena was overbroad, unspecific, and the district court properly found defendant was using subpoenas to engage in a fishing expedition).

Courts have so held even where defendants have proffered that the requested materials might possibly reveal some larger conspiracy or impropriety aimed at the defendant, see, e.g., United States v. Barnes, 560 F. App'x 36, 39-40 (2d Cir. 2014) (upholding district court's decision to quash defendant's subpoena for records on the basis that the defendant was engaged in a fishing expedition where the defendant could proffer only speculation that inmates cooperating with the government were conspiring to testify falsely against him and the subpoenaed materials would so demonstrate); cf. United States v. Weissman, No. 01-CR-529, 2002 WL 31875410, at *1 (S.D.N.Y. 2002) (quashing subpoena because defense counsel "merely speculate[d] that the materials may constitute inconsistent statements" and did "not know what value the materials [would] have"), or when the defendant claims that the subpoenaed materials are necessary to obtain Brady or Giglio materials, see, e.g., Mendinueta-Ibarro, 956 F. Supp. 2d at 512, 514-15 (quashing defendant's subpoena to NYPD in federal prosecution seeking, in part, allegedly undisclosed Brady and Giglio material).

In addition, Nixon established that Rule 17 subpoenas could generally not be used to obtain impeachment materials. See Nixon, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); see also Weissman, 2002 WL 31875410, at *1 (citing cases that "articulate an absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes").

In addition to the limitations placed on Rule 17 subpoenas by Nixon, courts have also recognized that Rule 17 subpoenas are constrained by various other procedural and statutory provisions. For example, the Federal Rules of Criminal Procedure explicitly preclude the use of subpoenas to seek prior statements by prospective witnesses. In particular, Rule 17(h) provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Fed. R. Crim. P. 17(h). Rule 26.2, in turn, provides, in relevant part, that upon the motion of a party who did not call a witness, the court must order the party calling the witness to

4

produce "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2.

Furthermore, the statutory provisions of the Jencks Act, Title 18, United States Code, Section 3500, bar the disclosure of any witness statement before trial, thereby further limiting the scope of Rule 17 subpoenas as they relate to witness statements. See, e.g., United States v. Hatfield, 2009 U.S. Dist. LEXIS 60184, *2-4 (E.D.N.Y. July 14, 2009) (quashing subpoena for witness statements because it failed to meet the Nixon requirements and violated Rule 17(h) and Section 3500); Khan, 2009 WL 152582, at *2-6 (quashing subpoenas for prior statements of potential government witnesses because they violated Rule 17 and Section 3500); Mendinueta-Ibarro, 956 F. Supp. 2d at 515 (quashing subpoena to local law enforcement where "'any and all' language of the subpoena would encompass [witness] statements" covered by Section 3500); Louis, 2005 WL 180885, at *5 (quashing subpoena that likely called for material covered by Section 3500, in part, because the Court cannot require the production of "3500 material" prior to the conclusion of a witness's direct testimony).

Finally, courts have also recognized that Rule 17 subpoenas are constrained by the limitations set forth in Federal Rule of Criminal Procedure 16. See United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) ("Courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16."). Rule 16(a)(2) precludes "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" and precludes "the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2). Rule 16(a)(2) therefore "protects from subpoena any reports made by government agents during the course of an investigation or prosecution." See, e.g., Mendinueta-Ibarro, 956 F. Supp. 2d at 514, 515 (quashing defendant's subpoena, in part, because it sought from local law enforcement assisting the federal government in its investigation materials that necessarily included reports made by government agents protected by Rule 16(a)(2)); see also Bowman Dairy Co. 341 U.S. at 220 ("It was not intended by Rule 16 to give a limited right of discovery and then by Rule 17 to give a right of discovery in the broadest terms."); Chen De Yian, 1995 WL 614563, at *1 (quashing subpoena to local law enforcement which conducted independent investigation of federally charged murders where service of subpoena would circumvent prohibition under Rule 16(a)(2) barring production of reports generated by law enforcement).

This Court recently reaffirmed these principles in quashing four ex parte subpoenas sent by the Federal Defenders of New York to local law enforcement agencies (the SCPD and the Nassau County Police Department). See United States v. Robinson, No.

5

16-CR-545, ECF No. 57 (E.D.N.Y. Apr. 10, 2017) (Spatt, J.).  In circumstances substantially similar to those here, the Court concluded that the subpoenas improperly sought to circumvent Rule 16 and failed under the Nixon standard.  Id. at 7.

      B.     Discussion

The defendant's subpoenas for the investigative files of the SCPD should be quashed because they improperly seek to circumvent Rule 16, as well as other Federal Rules and the Jencks Act, and fail to meet the Nixon requirements for a Rule 17 subpoena.

First, the Court should quash the subpoenas on the basis that they seek to circumvent Rule 16(a)(2)'s prohibitions against disclosure of government work product.  The subpoenas plainly seek internal reports and memoranda created by law enforcement and similar information.  See Ex. C (calling for the production of "any arrest reports, case/incident and supplemental reports" and "written" recordings regarding 911 calls and the defendant's arrest).  Rule 16(a)(2) protects these materials from disclosure.  See Fed. R. Crim. P. 16(a)(2); Robinson, No. 16-CR-545, ECF No. 57 at 6-7 (collecting cases).  The defendant cannot use Rule 17 to circumvent those protections.  See Robinson, No. 16-CR-545, ECF No. 57 at 7.

Second, the Court should quash the subpoenas on the basis that they seek to circumvent the Federal Rules and Jencks Act prohibitions against disclosure of prospective witnesses' statements at this time.  The subpoenas call for the production of such statements.  See Ex. C (calling for the production of "[a]ny and all radio runs, 911 tapes, dispatch transmissions and any other recordings, written, audio or video" and "[a]ll police contact" regarding 911 calls placed by witnesses).  Rule 16, Rule 17, Rule 26.2, and the Jencks Act protect these materials from disclosure.  See Fed. R. Crim. P. 16(a)(2), 17(h) and 26.2(a); 18 U.S.C. § 3500(a).  The defendant cannot use Rule 17 to circumvent these protections either. See Robinson, No. 16-CR-545, ECF No. 57 at 6.

Third, the Court should quash the subpoenas because they run afoul of Nixon. As an initial matter, to the extent that the subpoenas seek materials that are subject to discovery under Rule 16, Giglio, Brady, and the Jencks Act, the government will disclose those materials at the appropriate time during the ordinary course of discovery, subject to appropriate protective orders and limitations that may apply in national security cases.  The materials are thus "otherwise procurable reasonably in advance of trial by exercise of due diligence."  Nixon, 418 U.S. at 699; see Robinson, No. 16-CR-545, ECF No. 57 at 7. Moreover, the subpoenas on their face do not seek specific "evidentiary and relevant" materials that are admissible.  See Robinson, No. 16-CR-545, ECF No. 57 at 7-8 (noting that police investigative files are hearsay).  Instead, the defense makes blanket requests for "any" and "all" reports, recordings, and police contact, without limiting the requests to items that are known to exist or making a showing that such items would be admissible and are

necessary at this time.  See Louis, 2005 WL 180885, at *2-3 (quashing defendant's subpoena where defendant's arguments for relevance and necessity consisted "almost exclusively of blanket invocations" of the right to compel attendance of witnesses and "conclusory arguments that the subject matter of the documents [went] to the heart of his arguments").  With these subpoenas, the defense is engaging in precisely the sort of fishing expedition that Nixon prohibits.  See Nixon, 418 U.S. at 699-701; Robinson, No. 16-CR-545, ECF No. 57 at 7-8.

III.    Conclusion

        For the foregoing reasons, the government respectfully requests that the Court quash defense counsel's pex parte subpoenas to the SCPD.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York

By:      /s      
        Saritha Komatireddy
        J. Artie McConnell
        Assistant U.S. Attorneys
        (718) 254-7000

cc:    Lakeytria Felder, Esq. (by ECF)