UNITED SATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

       -against-

ELVIS REDZEPAGIC,

          Defendant.
------------------------------X

MEMORANDUM AND ORDER
17-CR-228(DRH)

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 02 2020 ★
LONG ISLAND OFFICE

A T T O R N E Y S:

For the Government:
    Richard P. Donoghue
    United States Attorney
    Eastern District of New York
    Central Islip, New York
      By: Artie McConnell, A.U.S.A.
         Saritha Komatireddy, A.U.S.A.

For Defendant:
    Ahmad & Roche LLP
    22 Cortlandt Street, 16th Floor
    New York, New York 10007
      By: Hassan Ahmad, Esq.
         David Roche, Esq.

HURLEY, Senior District Judge

### Nature of Charges

      The defendant, Elvis Redzepagic, ("defendant" or
("Redzepagic"), is charged with two counts of attempting to
provide material support to a foreign terrorist organization
("FTO") in violation of 18 U.S.C. § 2339B(a)(1) - specifically,
attempting to provide himself to the Islamic State of Iraq and
al-Sham ("ISIS") and the al-Nusrah Front.  The charges arise from
defendant's efforts to enter Syria through Turkey in 2015 as
alleged in Count One and to enter Syria in 2016 through Jordan as
set forth in Count Two.

<u>JTTF Agents Arrest of Defendant and Questioning</u>

Agents of the Federal Bureau of Investigation New York Joint Terrorism Task Force ("JTTF") interviewed the defendant on February 2, 2017.  That interview came about after members of the Suffolk County Police Department arrested Redzepagic for misdemeanor possession of marijuana.  During the arrest processing, he is reported to have become "verbally combative and [to have] spontaneously stated that he was going to 'leave this country and come back with an army — Islam is coming.'"  Gov't's Opp'n to Def.'s Pretrial Motions, (Doc. #97), at 4.  That comment apparently spurred a call to the JTTF, members of which arrived shortly and interviewed defendant on February 2nd and again on February 3rd, 2017.  During those interview sessions, he provided information about the subject trips to both Turkey and Jordan, with the intended destination to be Syria.  If that goal was realized, he was to join his cousin, a leader of ISIS, in that organization's jihadist activities.

Armed with the information provided by Redzepagic in early February, and after verifying much of that information by checking, <u>inter alia</u>, travel and hotel records, agents went to the Redzepagic's home on March 3, 2017.  There, and on that date, the agents executed a warrant for his arrest for the instant federal crimes signed by a magistrate judge of the Eastern District of New York.  What followed was six plus hours of questioning of the defendant by the agents with periodic breaks.

Those sessions were the subject of audiovisual recordings.

The foregoing is intended primarily to furnish a sequential listing of the events surrounding Radzepagic's arrest and questioning; it does not detail what transpired during those points in time, either from the government's or the defendant's perspective.  Such detailed information, together with the concomitant views of the facts and associated arguments of the parties, will be supplied during the discussions of each of the defendant's pretrial motions infra.

<u>Defendant's Pretrial Motions and Decision Format</u>

By Notice of Motion dated September 5, 2019, defendant seeks a dismissal of the indictment for its "fail[ure] to state an offense with sufficient particularity,"[1] coupled with various applications to suppress his recorded and non-recorded statements to law enforcement as well as the fruits obtained via searches of his computer, cell phone, and social media accounts. Additionally, he requests an order directing the government to provide a Bill of Particulars plus additional items of discovery. See Def.'s Not. of Motion (Doc. #93).

---

[1] Defendant's application to dismiss the indictment was denied by the Court in a bench decision given on January 23, 2020.

During oral argument on that date the government addressed the Court's concern as to the word "including" with reference to the "material support" intended to be provided by defendant by indicating that its proof as to that element would consist solely of himself, not anything else.

By way of format, I well address and decide in this
Memorandum and Order those applications of Redzepagic which are
currently ready for final adjudication and indicate which ones do
not fall within that category.

### Demand for Bill of Particulars

1. General Nature of the Requests

The Defendant's first of sixteen requests for
particulars reads: "With respect to Count One, state the nature
and date of any and all actions of the defendant upon which the
prosecution will rely to establish that the defendant intended
to provide material support to ISIS."  Id. at 24 (emphases in
original).

To the extent the first request seeks a preview of the
government's evidence bearing on an element of its case against
defendant - which it does - the same characteristic is found, to
vary degrees, in the other fifteen requests.

2. Defendant's Position

The following excerpt from defendant's memorandum
provides his claimed need for the particulars sought:

> The above requested particulars are
> essential to the preparation of a defense in
> this matter.  The government should have to
> state well in advance of trial what actions
> of defendant they are claiming prove that he
> intended to and actually attempted to join
> ISIS and al-Nusra Front or otherwise
> attempted to provide material support to
> either or both organization(s).  Likewise,
> the government should be required to state

4

which statement of the defendant they will be
claiming establish the defendant's intent to
prove he attempted to commit the charged
crimes.

The government is in possession of several
thousand pages of the defendant's social
media communications in addition to the hard
drive of his computer and all of his cell
phone data.  The government also possesses a
videotape of an approximately six hour long
videotaped interrogation and claims that the
defendant made additional statements to
government agents that were not recorded.
Upon information and belief, the government
also intends to present evidence at trial
that the defendant made admissions and
utterances to cooperating witnesses.[2]  The
defendant should be provided with the
requested particulars of statements that the
government intends to use at trial so that he
can adequately prepare a defense including
preparation and presentment of appropriate
argument as to whether any such statements
are privileged, overly prejudicial or
inadmissible for any reason.  Without such
requested particulars being provided well in
advance of trial, the defendant will be
prevented from preparing an adequate and
effective defense.

Id.  at 27.

    3.  Government's Position

    In opposing each of the particulars sought, the

government highlights, e.g., that the two counts in the

accusatory instrument are straightforward and precisely delineate

the charged criminality.

    In the government's view, the indictment considered in

_____

    [2]  The source of the "information and belief" is not
identified.

conjunction with the voluminous additional information provided
to the defense in such documents as the complaint and the warrant
affidavit, more than satisfy the goals sought to be advanced by a
bill of particulars.  Thus, the government deems the request as
both unnecessary and out-of-sync with applicable law.

    4.  <u>Applicable Law</u>

        Defendant's request for a bill of particulars is
brought pursuant to Rule 7(f) of the Federal Rules of Criminal
Procedure.  That subdivision of the Rule allows a defendant "to
identify with sufficient particularity the nature of the charge
pending against him, thereby enabling [him] to prepare for trial,
to prevent surprise, and to interpose a plea of double jeopardy
should he be prosecuted a second time for the same offense."
<u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987).
Given that the effect of a bill of particulars may well be to
limit the government's proof at trial to the particulars
provided, <u>see e.g.</u>, <u>United States v. Glaze</u>, 313 F.2d 757, 769 (2d
Cir. 1963)(internal citations omitted), "[a] bill of particulars
should be required only where the charges of the indictment are
so general that they do not advise the defendant of the specific
acts of which he is accused."  <u>United States v. Torres</u>, 901 F.2d
205, 234 (2nd Cir. 1990).

        "In determining whether a bill of particulars is
warranted the important question is whether the information

6

sought is necessary,[3] not whether it is helpful.  Consistent with this principle, courts generally deny requests concerning the whereas, when and with whom[] of the crime" <u>United States v. Perryman</u>, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012)(internal cites and most internal quotation marks deleted).

     5.    Defendant is not Entitled to the Bill of
           Particulars Sought

      The sixteen requests made by Redzepagic all are geared solely to obtaining a preview of the government's evidence absent any convincing argument that such information is somehow discoverable under Rule 7(f) and related case law.  Such advance notice surely would be helpful to the defense.  By way of an example, it would lessen the likelihood of defendant being surprised at trial by the prosecution moving an unanticipated item of proof into evidence.  But, as noted, "helpfulness" is not the appropriate standard in evaluating an application for a bill of particulars.  Instead, "necessity" must be the analytical focal point.  Yet that subject is barely addressed in defendant's otherwise well crafted submission presumably because no necessity

---

   [3]  In determining whether defendant has established "necessity," the Court's consideration is not confined to the indictment.  Additional sources of information such as, for example, the Complaint (Def.'s Ex. 10 to Not. of Motion) are also germane although here, parenthetically, such additional references appear unnecessary.  <u>See</u> <u>United States v. Walsh</u>, 194 F.3d 37, 47 (3d Cir. 1999)("a bill of particulars is not necessary where the government has made sufficient disclosures . . . by other means.").

exists.

Defendant does complain about the paucity of material contained in the discovery thus far provided as to Count Two. Def.'s Reply to Gov't's Opp'n to Def.'s Pretrial Motions (Doc. #97) at 4 (the government in its opposition papers "fails to point out that the overwhelming majority of the combined disclosure all pertain to the defendant's travel to Turkey, the first count of the indictment, and nothing of substance towards the defendant's travel to Jordan, the second count of the indictment".)  In an effort to cure that purported deficiency, defendant cites the Second Circuit decision in United States v. Bortnovsky and its language identifying the purposes of a bill of particulars as including to permit an accused "to prepare for trial" and "prevent surprises." United States v. Bortnovsky, 820 F.2d at 574.  However that languages must be viewed in context.

Bortnovsky sought the information requested in his bill of particulars to understand the nature of the charges he faced. From a perusal of the indictment he surely knew he was accused of a scheme to defraud certain governmental agencies through the submission of false and inflated insurance claims related to several falsely reported burglaries.

Bortnovsky endeavored to learn which of the reported burglaries referenced in the indictment never actually occurred according to the government, and which of the numerous documents

8

referenced therein supposedly were falsified.  The government's
response to defense counsel's demand for some specificity was met
by the prosecution permitting defense counsel "to inspect and
copy some 4,000 documents."  Id.  Defense counsel subsequent
effort to obtain the needed information pursuant to Rule 7(f) was
rejected by the trial court.

 Bortnovsky's post conviction appeal to the Second
Circuit was successful as reflected in the following excerpt from
the Court's decision:

> We conclude that appellants were hindered
> in preparing their defense by the district
> court's failure to compel the Government to
> reveal crucial information: the dates of the
> fake burglaries and the identity of the three
> fraudulent documents.  Appellants were forced
> to explain the events surrounding eight
> actual burglaries and to confront numerous
> documents unrelated to the charges pending.
> In effect, the burden of proof impermissibly
> was shifted to appellants.  While we commend
> the Government for cooperating in the turning
> over of documents prior to trial, we do not
> look with favor on the manner in which the
> government conducted the prosecution.  The
> relevance of key events was shrouded in
> mystery at the commencement and throughout
> the trial.  The Government did not fulfill
> its obligation merely by providing mountains
> of documents to defense counsel who were left
> unguided as to which documents would be
> proven falsified or which of some fifteen
> burglaries would be demonstrated to be
> staged.  Appellant Bortnovsky's counsel was
> particularly susceptible to being waylaid by
> such a tactic as he had only four days within
> which to prepare a defense.  In sum, we find
> that the district court erred by failing to
> grant a bill of particulars which was vital
> to appellants understanding of the charges

> pending and to the preparation of a defense
> and which would have prevented the Government
> in its attempt to proceed furtively.

Id. at 574-75.

Here, unlike in Bortnovsky, Redzepagic does not need a bill of particulars to understand the charges he faces.  The indictment is free of confusing surplusage and unequivocally states in readily understandable language the crimes charged.

In sum, the Court, based on the information and arguments advanced rejects defendant's claimed need for any of the sixteen particulars sought.  In those requests, he seeks in essence, a preview of the government's evidence, a goal inconsistent with the appropriate function of a bill of particulars.

### Defendant's Other Discovery Requests

Thus far defendant has been provided "with significant discovery spread over 14 separate productions."  Def.'s Memo. in Support at 28.  He now moves under Rule 16 of the Federal Rules of Criminal Procedure to compel the following additional items to be furnished:

A.   identity of government's informants;

B.   "any and all recordings, reports, summaries and notes concerning interviews by law enforcement of Mr. Redzepagic's family members, friends and associates regarding the subject matter of this case or in connection to this case in any

10

way"[;]

      C. "[t]o the extent that the government possesses, is aware of, or has reason to be aware of any information potentially favorable to the defendant, including any information provided by witnesses or community members pertaining to Mr. Redzepagic's mental state, such information should be provided to the defense forthwith"[;] [and]

      D. "[t]o the extent that the government possesses, is aware of, or has reason to be aware of any records, reports or communications prepared by foreign law enforcement agencies, including any such materials prepared by or received from any Turkish and/or Jordanian and/or Montenegran law enforcement agencies regarding Elvis Redzepagic, said materials should be provided to the defense forthwith."  Id. at 218-30.

      The government opposes each of the requests as untethered to "a sufficient legal or factual basis."  Gov't's Opp'n to Def.'s Pretrial Motions (Doc. #97) at 61.

      A.  Names of Informants

      With respect to request A seeking the names of any informants, the support furnished is scant consisting of a conclusory assertion of need and a cite to Roviaro v. United States, 353 U.S. 53 (1957).

      In Roviaro, the "John Doe" informant was "the sole participant, other than the accused in the transaction charged."

11

Id. at 64.  It appeared he had relevant information that likely
would have been helpful to the defense had the government not
withheld his identity.  Whether the informant or informants in
Redzepagic possess comparable information to John Doe's in
Roviaro is unknown to the Courts.  Also unknown, and not even
addressed by the movant, is the manner in which the informant's
testimony might aid the defense.  See United States v. Flaharty,
295 F.3d 182 (2d Cir. 2002).

In the final analysis, the answer to the question of
whether Redzepagic is entitled to the identifications sought
involves a balancing process weighting "the public interest in
protecting the flow of information against the individual's right
to prepare his defense.  Whether a proper balance renders
nondisclosure erroneous must depend on the particular
circumstances of each case, taking into consideration the crime
charged, the possible defenses, the possible significance of the
informer's testimony, and other relevant factors."  Roviaro v.
United States, 353 U.S. at 62.

I have not been furnished with the necessary
information to weigh the competing interests involved.  That
deficiency is to the detriment of defendant since he bears "the
burden of showing the need for disclosure."  United States v.
Fields, 113 F.3d, 313, 324 (2d Cir. 1997).  Having failed to
satisfy his obligation, defendant's application for the identity

of the informer or informants is denied.

> B. Production of Recordings, Reports,
>    Summaries and Notes of Government
>    Interviews of Defendant's Family
>    Members, Friends and Associates

Movant provides no authority or argument in support of this request.  But as aptly noted by the government:

> The government . . . has no general duty to disclose the statements of its witnesses in advance of trial.  Rule 16 expressly 'does not authorize the discovery or inspection of . . . . statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.'  Fed. R. Crim. P. 16(a)(2). . . . Section 3500 provides that 'no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness had testified on direct examination in the trial of the case.'  18 U.S.C. § 3500(a).

Gov't's Opp'n to Def.'s Pretrial Motions (Doc. #97) at 60.

Accordingly, Request B is denied.

> C. Brady Request

The government represents that it is aware of its discovery obligations under Federal Rule of Criminal Procedure 16 and federal case law including Brady v. Maryland, 373 U.S. 83 (1963).  Not only is it aware of its obligations, but it gives its assurances that it has complied, and will continue to comply with those obligations throughout the pendency of the case. Gov't's Opp'n to Def.'s Pretrial Motions (Doc. #97) at 64.

13

Defendant has proffered nothing to question the accuracy of those representations.

Accordingly Request C is denied on the ground that its resolution is unnecessary because of the government's past and ongoing compliance.

> D.  Production of any Records, Reports or Communications Prepared by Foreign law Enforcement Agencies Possessed by the Government

Here, like with requests B and C, the request is made absent any authority or accompanying argument.

In any event, the request as framed is overly broad. The government is not obligated to turn over the materials sought. Cf. Fed. R. Crim. P. 16(a)(2).

Defendant's Suppression Motions

1.  General Nature of Request

The defendant moves to suppress statements he made to law enforcement agents on February 2nd, February 3rd, and March 3rd of 2017, as well as the fruits of the consents he provided to the law enforcement personnel permitting the search of his Facebook and Instagram accounts, laptop computer, and cellular telephone. In addition, he seeks the suppression of apparently the same computer, cell phone and social media materials recovered by members of the JTTF upon the execution of two search warrants signed by Magistrate Judge Gold.

2.  Defendant's Position

14

With respect to the portion of the suppression motion dealing with statements made to law enforcement, he claims that although he was provided with his <u>Miranda</u> rights by the agents, his waiver of those rights was not the product of a voluntary, knowledgeable and intelligent decision on his part. He avers in his affidavit with respect to the March 3rd statements that he had consumed controlled substances the night before and had not slept in the interim between the drugs' ingestion and the commencement of the questioning. As a result, he proffers, he was exhausted and unable to concentrate. Moreover he understood that the agents would not let him sleep until the questions they were propounding were answered to their satisfaction. That scenario is said to have created a coercive setting for the interrogation. Somewhat similar complaints are made by Redzepagic in his affidavit concerning the February 2nd and 3rd sessions. At the very least, he seeks a hearing.

With respect to the search warrants pertaining to his cell phone, computer, and social media accounts defendant maintains that had the agents informed Judge Gold of his drug dependency and of other relevant information probable cause would not have been found to exist and the warrants would not have issued.

3.  <u>Defendant's Belated Affidavit</u>

The defendant's original motion to suppress lacked an

affidavit from the defendant.  As a result, the government understandably moved for a denial of the motion on that ground, citing a host of cases including <u>United States v. Watson</u>, 404 F.3d 163, 167 (2d Cir. 2005).  That fatal flaw was cured in defendant's reply papers which included Redzepagic's affidavit. Therein he states in paragraphs 5 through 11 as follows:

5.   My thought processes and ability to listen and understand were impaired by drugs when I spoke with government agents on February 2, 2017, February 3, 2017, and March 3, 2017.

6.   When I spoke with the government agents, I was unable, due to my drug abuse, to understand and did not understand that the agents were asking me to waive rights.

7.   When I spoke with the government agents, I was unable, due to my drug abuse, to understand and did not understand that I was a suspect in a case, nor did I understand the possibility that my statement could be used against me in a criminal prosecution.

8.   When I spoke with the government agents, I was unable, due to my drug abuse, to understand and did not understand that I had the right to have refused to speak with the agents.

9.   When I spoke with government agents, I was unable, due to my drug abuse, to understand and did not understand that I had the right to have an attorney present during my questioning.

10.  When the government agents asked me on February 3, 2017 to consent to a search of my electronic devices, I was unable, due to my drug abuse, to understand and did not understand that I had an option to refuse consent.

11. At the time that the agents questioned me on March 3, 2017, I was physically and mentally exhausted from drug use and lack of sleep. I desperately needed to sleep but believed, based on interactions with the agents, that I would not be permitted to sleep until the questioning concluded.

Def.'s Nov. 28 Aff. attached to his Reply (Doc. #99).

    4. <u>Government's Position</u>

As earlier noted, the government cited the defendant's failure to include with his original submission an affidavit detailing how his constitutional rights were violated. That deficiency was corrected via the submission of the affidavit partially quoted above. However, that doesn't necessarily answer the question of whether the motions to suppress lend themselves to resolutions solely on the materials presently before the Court as the government originally and still urges.

In the government's view no hearing is required even after receipt of defendant's affidavit. Those reasons are said to include the March 3rd audiovisual recordings which fully captures what transpired during those sessions. The recordings show the defendant's acknowledgment that he "was adequately advised of his <u>Miranda</u> rights and made a knowing, intelligent, and voluntary waiver." Gov't's Opp'n to Def.'s Pretrial Motions (Doc. #97) at 26. To the extent defendant maintains that his drug usage somehow should be deemed to override what the recordings show as to his <u>Miranda</u> warnings and consent to search,

the government cites <u>Albany v. Keane</u> for the proposition that "[e]ven evidence of a defendant's intoxication . . . does not preclude a finding of knowing and intelligent waiver provided [the defendant] appreciate[d] the nature of the waiver." <u>Alvarez v. Keane</u>, 92 F. Supp. 2d 137, 150 (E.D.N.Y. 2000). In essence, the government contests the need for a hearing given the attendant circumstances.

    5. <u>Discussion</u>

The defendant does not dispute that the audiovisual recordings of the questioning on March 3rd accurately reflects the dialogue which occurred between the agents and himself on that date. Nor does he contend that during the breaks in the sessions that relevant interaction occurred.

But the apparent agreement as to the completeness of the March 3rd recordings does not obviate the corresponding need for a hearing as to the <u>Miranda</u> issue. The Court has an obligation to evaluate the representations contained in the above quoted sections of Redzepagic's November 28, 2019 affidavit in context. If, for example, the evidence from whatever source shows that he did not understand his <u>Miranda</u> rights including his right to remain silent due to his poor physical condition and the interrogation environment, that would warrant the suppression of the related statements thereafter provided. <u>See generally United States v. Taylor</u>, 745 F.3d 15 (2d Cir.2013).

Even though the recordings of the March 3rd session, viewed in isolation, seem to indicate that Redzepagic was provided with Miranda warnings, and made a knowing, voluntary and intelligent decision to proceed nonetheless – and also consented during the course of the questioning to the subject searches – that in and of itself is not dispositive of the issue under discussion.

Procedurally, no foundation has yet been laid for the receipt into evidence of the March 3rd audiovisual tapes.  And I've heard no testimony via audiovisual means or otherwise concerning the February 2nd and 3rd questioning.  Moreover, given the conflicting positions taken by the parties bearing on the mindset of the defendant at the times in question, I will be required as the hearing judge to determine where the truth lies. That process typically entails weighing testimony and making credibility determinations based, at least in part, on the Court's assessment of the witnesses' demeanor during direct and cross examination.

In sum, defendant's request for a hearing is granted to address whether he voluntarily and knowingly waived his Miranda rights which he seemingly acknowledges were provided to him by the agents, and whether the purported consents he gave were voluntarily in nature.

As to defendant's motion targeting the search warrant

19

application submitted to Judge Gold, that subject will be addressed _infra_ in the next section of this memorandum.

 <u>Application to Suppress the Fruits of the Two Search Warrants</u>

1.  <u>General Nature of Request</u>

On February 5, 2017, the Hon. Steven M. Gold, United States Magistrate Judge for the Eastern District of New York signed two search warrants in the captioned case, both predicated on the same twenty two page affidavit.  <u>See</u> the following exhibits attached to Def.'s Not. of Motion (Doc. #93): Ex. 5 (authorizing the search of Redzepagic's Facebook EMail Account) and Ex. 6 targeting defendant's Apple iPhone and his Apple Mackbook Pro); <u>see also</u> Ex. 7, that being the just referenced common affidavit submitted in support of both search warrants.

Defendant seeks an order suppressing the fruits realized upon the execution of the subject warrants.

2.  <u>Defendant's Position</u>

Defendant contends that his "Fourth Amendment rights were violated by the government's searches of his private social media accounts, computer and cell phone because the warrants were unconstitutionally overbroad and unreasonable.  Accordingly, the fruits of those searches should be suppressed."  Def.'s Mem. in Support of relief sought in Not. of Motion (Doc. #93) at 20.  Not only are the warrants overbroad warranting suppression, they are said to also be deficient as "insufficiently particularized."

Id.[4]

Defendant also argues that the affidavit in support was fatally defective for omitting certain "critical information" which should have been provided to Judge Gold.  Id. at 23. "[H]ad the Magistrate Judge known [, inter alia] that Mr. Redzepagic was a troubled drug addicted young man with a history of delusions and hearing voices they[5] would not have issued the warrant and would not have issued the extremely broad warrants requested."  Id.

   3.   Government's Position

In response, the government proffers that the warrants neither suffer from overbreadth nor lack of particularization, and that the supposedly critical information absent from the supporting affidavit is not material.  And even if, arguendo, material, its inclusion would not effect the finding of probable cause.

   4.   Discussion

      a) Overbreadth

---

   [4]  Although related, overbreadth and lack of particularity are distinct legal concepts.  "Overbreadth" is present when probable cause is absent as to some or all of the items targeted for seizure.  "Particularity" pertains to the requirement that a warrant be "sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers."  United States v. Hernandez, 2010 WL 26544 at *7 (S.D.N.Y. Jan. 6, 2010).

   [5]  Both warrants were issued by Judge Gold.

The scope of the electronic information that the government was authorized under the warrants to seize for purposes of inspection was very broad even though much, probably most of the items involved were free of criminal taint.  But that doesn't render the warrants overly broad.  See In re Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled by Google, Inc., 33 Supp.3d 386, 393 (S.D.N.Y. 2014), as amended (Aug. 7, 2014)("We view it as well established that a search warrant can properly permit the Government to obtain access to electronic information for purposed of a search even where the probable cause showing does not apply to the entirety of the electronic information that is disclosed to the Government.") See also United States v. Ulbricht, 858 F.3d 71, 101-02 (2d Cir. 2017)(approving search in the sense of inspection of defendant's entire Facebook account and laptop based on probable cause to believe that evidence of identified criminal activity is likely to be included among the reams of materials included therein); United States v. Westley, 2018 WL 3448161 (D. Conn. July 17, 2018); and advisory committee's note to 2009 amendment to Fed. R. Crim. P. 41(e)(2)(discussing two step process often entailed in executing a search warrant involving computers and other electronic storage media).

It should also be noted that the two-step

22

inspection/seizure process discussed above in the context of overbreadth is also relevant to "particularly" next discussed. To the extent probable cause as described in the warrants sets the appropriate parameters for the seizure of information for evidentiary purposes, it serves to guide the person or persons who execute the warrants as to the appropriate focus for his or her efforts.

b) <u>Particularity</u>

The subject search warrants are "sufficiently particularized on [their] face[s] to provide the necessary guidelines for the search by the executing officers." <u>United States v. Hernandez</u>, 2010 WL 26544 at *7 (S.D.N.Y. Jan. 6, 2010). They, along with their Attachments, identify the specific offenses for which law enforcement had probable cause, that being information bearing on "violations of Title 18, United States Code, Sections 2339B(a)(1)(providing, conspiring to provide, or attempting to provide material support and resources to a foreign terrorist organization and 1001(a)(1)-(2)(concealing material facts or making false statements), involving the owners and users of the [targeted devices], their co-conspirators, associates and others with or about whom they have communicated, since January 1, 2014." <u>See</u> Attachments B and D to Exs. 5 and 6 respectively to Def.'s Not. of Motion (Doc. #93).

In specifically detailing the criminal conduct under

23

investigation, the search warrants provide the necessary guidance to the executing officers as to which items may be seized as potential evidence based on probable cause as distinct from electronic information which may be briefly viewed to see if they fall within that category.  And the search warrants clearly identify the Redzepagic computer devices and social media sites as the objects to the searched.

In view of the foregoing, the search warrants pass muster as to "particularity" under Second Circuit law.  See United States v. Ulbricht, 858 F.3d at 99 ("To be sufficiently particular under the Fourth Amendment a warrant must satisfy three requirements . . . .  The warrant must (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." (Internal cites deleted).

c) Omitted Material

Finally with respect to the February 5, 2017 search warrants, Redzepagic contends the underlying application submitted to Judge Gold was misleading thereby rendering the warrants suspect to the degree of requiring, at the very least, "a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 155-56 (1978) to determine whether the relevant evidence actually supports the issuance of search warrants and whether the issuing

24

magistrate [] [was] misled by the selective information presented to [him]."  Def.'s Not. of Motion (Doc. #93) at 24.

Five items of "critical information" are said to be missing from the warrant application including defendant's "long and verifiable history of drug addiction" and his mother's report that he on occasion exhibited "delusional and psychotic behavior."[6]  Id. at 23.

The government's response is multifaceted.  It includes challenging the materiality of the claimed admissions.  With respect to the request for a Franks hearing its position is that defendant "makes no allegation [- no less a substantial preliminary showing as required by Franks to warrant a hearing -] that the agents acted intentionally or recklessly in omitting the specified information from the affidavit[]."  Gov't's Papers in Opp'n (Doc. #95) at 50.

The Court concludes that the government — which has the burden of proof — clearly has the better side of the argument on the omissions issue.  The central question is whether "the alleged . . . omissions were necessary to the issuing judge's probable cause finding."  United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000).  As the government notes: "Whatever the extent of the defendant's drug use and erratic behavior, it was

———————————

[6] Whether the behavior occurred contemporaneously with his usage of controlled substances is not addressed.

not so severe as to erase this independent and objective evidence — it neither calls into question the credibility of the defendant's admissions nor provides a defense to the crimes." Gov't's Papers in Opp'n (Doc. #95) at 52.  In addition, the accuracy of many of the defendant's early February statements of fact were independently corroborated by the agents as evident from a perusal of the February 5th Affidavit in Support.

In sum, adding the five items said to have been recklessly withheld from Judge Gold to the probable cause analysis does not destroy his probable cause determination.

In essence, the materiality of the five items is problematic and, in any event, "there was sufficient information untainted by the alleged deficiencies to establish probable cause justifying issuance of the warrant." United States v. Levasseur, 816 F.2d 37, 42 (2d Cir. 1987).

5. Conclusion re Application to Suppress the Fruits
   Realized Upon Execution of the two Search Warrants

Judge Gold found probable cause.  That determination is entitled to "great deference"; indeed, "any doubt as to the existence of probable cause [should] be resolved in favor of upholding the warrant." United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998).  And, even if, arguendo, the warrant was not supported by probable cause, it appears that the officers who conducted the search proceeded in good faith reliance on a facially valid warrant.  To the extent that's true, that would be

26

an independent ground to deny the instant motion.   <u>United States</u> <u>v. Leon</u>, 468 U.S. 897, 918-23 (1984).

For the above reasons, I find that the government has established, based on the information currently before me, that the fruits obtained upon execution of the two February 5, 2017 warrants are admissible.   However, one part of the puzzle remains out-of place.

Much of the information in the warrant application is derived from the questioning of Redzepagic conducted on February 2nd and 3rd of 2017.   It is conceivable that a "fruit of the poisonous tree" argument could be advanced if the government loses the pending <u>Miranda</u> and constitutional attack focused on the early February statements.   Accordingly I will not enter a final order on this part of defendant's application until that threshold issue is resolved.

<u>CONCLUSION</u>

All of defendant's applications in his Notice of Motion dated September 6, 2019 (Doc. #93) are denied except to the extent (1) a hearing will be held regarding the <u>Miranda</u> and constitutional issues broached by the defense regarding the questioning of Redzepagic by members of law enforcement on February 2, February 3, and March 3, all of 2017.   The parameters of the hearing will include not only the admissibility of incriminating statements said to have been uttered by Redzepagic

27

but also the consents he provided to search his social media sites and computer devices; and (2) given that some of the statements from the February 2nd and 3rd interrogation sessions were presented to Judge Gold in the February 5, 2017 application for the subject search warrants, a decision on Redzepagic's motion to suppress the fruits of those warrants will be held in abeyance pending the conclusion of the suppression hearing.  The same is true as to the consents to search.[7]

      SO ORDERED.

Date: September 2 , 2020
      Central Islip, New York

                                        DENIS R. HURLEY, U.S.D.J.

---

[7] Contemporaneously with the defendant moving for the items of relief which are the subjects of this decision, the government moved for an order to preclude the defense from calling witnesses at trial to testify about defendant's abuse of controlled substances and certain instances of bizarre behavior.  That motion by the government will be addressed in another and subsequent decision.