**FILED**
**CLERK**

4:14 pm, Sep 07, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
                              :
UNITED STATES OF AMERICA,      :
                              :      17-CR-228 (DRH)(AKT)
        v.                     :
                              :      April 23, 2021
ELVIS REDZEPAGIC,              :
                              :      Central Islip, NY
            Defendant.         :
                              :
------------------------------X


        TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
    BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
            UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          SETH DuCHARME, ESQ.
                             UNITED STATES ATTORNEY
                             BY: ARTIE McCONNELL, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             271 Cadman Plaza East
                             Brooklyn, New York  11201



For the Defendant:           DAVID ROCHE, ESQ.
                             HASSAN AHMAD, ESQ.



Audio Operator:


Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             102 Sparrow Ridge Road
                             Carmel, NY 10512
                             (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

THE CLERK:  Criminal cause for guilty plea in 17-CR-228, United States of America v. Elvis Redzepagic.

Counsel, please state your names for the record.

MR. McCONNELL:  Your Honor, this is Artie McConnell for the United States.

THE COURT:  Good afternoon.

MR. ROCHE:  Good morning, your Honor.  David Roche and Hassan Ahmad for Mr. Redzepagic.  Good afternoon.

THE COURT:  Good afternoon.  We have another counsel as well?

MR. ROCHE:  Yes, Hassan Ahmad is also here for Mr. Redzepagic.

THE COURT:  State your appearance on the record.  Go ahead.

MR. AHMAD:  Hassan Ahmad along with David Roche on behalf of our client, Mr. Redzepagic.  Good afternoon, Judge.

THE COURT:  Good afternoon.

Mr. Redzepagic, I can see you but I want to make sure that you can hear me clearly.  Can you hear me?

THE DEFENDANT:  Yes, I hear you.

THE COURT:  And as for all the other counsel, if you would, when you are not speaking, I'm going to ask you to keep yourself on mute so that we don't get the feedback that we can get with these proceedings.

I have a preliminary matters that I need to go over with Mr. Redzepagic before we get to the actual plea, so let me begin with that.  First of all, as counsel are well aware, the Chief Judge of this district, Margo Brodie, has issued several administrative orders with respect to the manner in which certain proceedings are being held in light of the pandemic.  The most recent order, which dates from March 20th, indicates that criminal proceedings other than trials, to the extent possible, are to continue remotely pursuant to the provisions of the Cares Act and administrative order number 2020-13-3.  This is from her administrative order 2021-4-1.  This is one of the proceedings in the listing of proceedings that can go forward remotely and is urged to go forward remotely, as we are doing here today.

So the provision that I need to address, Mr. Redzepagic, is the fact that we're going to go forward today, so long as I know that you're consenting to this particular proceeding being conducted by means of video

conference.  Are you consenting to that, sir?

THE DEFENDANT:  Yes.

THE COURT:  Did you have the opportunity to speak with your counsel about proceeding in this manner?

THE DEFENDANT:  Yes.

THE COURT:  I'm going to ask counsel if you would just to confirm that fact, that you had that conversation with Mr. Redzepagic.

MR. ROCHE:  Yes, we did, your Honor.

THE COURT:  I have also before me an order of referral from Judge Hurley (ui) for the purposes of conducting the proceedings today (ui) permission to enter a plea of guilty, to conduct an allocution pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and my job is to first of all determine if the plea is knowingly and voluntarily made and not coerced, and secondly, to recommend to Judge Hurley that the plea of guilty should be accepted, reporting to him as soon as practicable.

Mr. Redzepagic, you understand that this is Judge Hurley's case, correct?

THE DEFENDANT:  Yes.

THE COURT:  He is the judge who will sentence you and ultimately make the decision as to

whether to accept your guilty plea.  If you wish, you have the absolute right under the Constitution to have Judge Hurley listen to your plea.  And if you choose to do that, there would be no prejudice to you in doing so.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Alternatively, if you wish, you can enter your plea here before me today and I will listen to the plea, and a transcript will be made by the court reporter of this proceeding.  Judge Hurley will then review the transcript to decide whether to accept the plea, and he will review the transcript in connection with your sentence.

So my question to you right now is, do you wish to give up the right to have Judge Hurley listen to your plea and instead proceed before me here this afternoon?

THE DEFENDANT:  Yes.

THE COURT:  Did you have the opportunity to discuss having your plea entered here before me once again with your counsel?

THE DEFENDANT:  Yes.

THE COURT:  Are you making the decision to proceed before me this afternoon voluntarily and of

your own free will?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone made any threats to you or promises to you to induce you to agree to have your plea heard before me this afternoon?

THE DEFENDANT:  No.

THE COURT:  Based on what I've heard from Mr. Redzepagic, I'm now going to sign the bottom of the order of referral, which is the consent portion, and the record will so reflect.

Let's move on now to the plea.  Mr. Redzepagic, before hearing your plea and making any recommendation to Judge Hurley, there are a number of questions that I must ask to assure that this is in fact a valid plea.  If for some reason, you don't understand any of the questions I'm about to ask you, please if you would raise your hand, speak up, let me know in some way that you don't understand, and I will try to rephrase the question in a way that you can answer it.

Can we agree to your doing that?

THE DEFENDANT:  Yes.

THE COURT:  I'm going to ask the clerk now please if you would to swear in the defendant.

THE CLERK:  Yes, Judge.

(Defendant is sworn.)

THE COURT:  Mr. Redzepagic, you understand that having been sworn now, your answers to my questions will be subject to the penalties of perjury or making a false statement if you do not answer them truthfully.

THE DEFENDANT:  Yes.

THE COURT:  What is your full name, please?

THE DEFENDANT:  Elvis Redzepagic.

THE COURT:  How old are you, Mr. Redzepagic?

THE DEFENDANT:  30 years old.

THE COURT:  Are you a citizen of the United States?

THE DEFENDANT:  Yes.

THE COURT:  What is the highest level of schooling that you've completed?

THE DEFENDANT:  High school.

THE COURT:  Are you now or have you recently been under the care of a physician or psychiatrist?

THE DEFENDANT:  No.

THE COURT:  In the past 24 hours, have you taken any narcotic drugs, medicine or pills, or drunk any alcoholic beverage?

THE DEFENDANT:  No.

THE COURT:  Have you ever been hospitalized

or treated for narcotics addiction?

THE DEFENDANT:  Yes.

THE COURT:  How long ago was that?

THE DEFENDANT:  I can't recall.

THE COURT:  Was it in the past few weeks or several years ago?

THE DEFENDANT:  Before 2017.

THE COURT:  Is there anything with respect to that treatment being behind you at this point that would have any impact at all on your ability to answer my questions here today truthfully?

THE DEFENDANT:  No.

THE COURT:  Is your mind clear as you sit here this afternoon?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand what's going on here in the course of this proceeding?

THE DEFENDANT:  Yes.

THE COURT:  Just bear with me for a second.

With respect to counsel, have you discussed this matter with your client?

MR. ROCHE:  Yes, your Honor.

THE COURT:  With respect to his rights, does he understand what rights he would be waiving by pleading guilty here?

MR. ROCHE:  Yes, he does, your Honor.  I've explained them to him.

THE COURT:  To the best of your knowledge, if Mr. Redzepagic capable of understanding the nature of these proceedings?

MR. ROCHE:  He is capable.

THE COURT:  Do you have any doubt at this time as to Mr. Redzepagic's competency to plead?

MR. ROCHE:  No, I do not, your Honor.

THE COURT:  Mr. Redzepagic, you have the right to plead not guilty.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead not guilty, under the Constitution and the laws of the United States, you are entitled to a speedy and public trial by jury with the assistance of counsel on the charges.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At the trial, you would be presumed to be innocent and the government would have to overcome that presumption and prove you guilty by competent evidence and beyond a reasonable doubt.  You would not have to prove that you were innocent.  If the government failed, the jury would have the duty to find

you not guilty.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  In the course of the trial, the witnesses for the government would have to come to court and testify in your presence, and your counsel would have the right to cross-examine the witnesses for the government, to object to evidence offered by the government, and to offer evidence on your behalf.  You also have the right to compel the attendance of witnesses at a trial.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At the trial, while you would have the right to testify if you chose to do so, you would not be required to testify.  Under the Constitution of the United States, you may not compelled to incriminate yourself.  If you decided not to testify, the Court would instruct the jury that they could not hold that against you.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Redzepagic, if you plead guilty and if I recommend to Judge Hurley that the plea be accepted, you'll be giving up your constitutional

right to a trial and all the other rights that I just discussed with you. There will be no further trial of any kind and no right to appeal or collaterally attack, or at any time question whether you are guilty or not. A judgment of guilty will be entered on the basis of your guilty plea, and that judgment can never be challenged. However, you have the right to appeal with respect to the sentence.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty, Mr. Redzepagic, I will have to ask you questions about what you did in order to satisfy myself that you are guilty of the charge to which you seek to plead guilty, and you will have to answer my questions and acknowledge your guilt. Therefore, you will be giving up your right not to incriminate yourself.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Redzepagic, are you willing to give up your right a trial and the other rights that I just discussed with you?

THE DEFENDANT: Yes.

THE COURT: I have before me a document marked as Court Exhibit 1, which is your plea agreement

in this case.

First of all, have you had the opportunity to review the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  Did you have also an opportunity to discuss it with Mr. Roche and Mr. Ahmad as your attorneys?

THE DEFENDANT:  Yes.

THE COURT:  I'm going to ask Mr. McConnell on behalf of the government if you would to list whether there's any waiver of appeal or other waivers of rights included in this plea agreement.

MR. McCONNELL:  Yes, your Honor.  The plea agreement spells out the guidelines calculation if your Honor would like me to go through that, or just the appellate waiver portion.

THE COURT:  Why don't you do the appellate waiver portion.  I think the rest --

MR. McCONNELL:  Okay.

THE COURT:  Since he's indicated he's gone over it with counsel, I think we're okay.

MR. McCONNELL:  Okay.  Just for the record, the guidelines calculation -- the effective guideline range is 240 months by the government's calculation.  The appellate waiver says that Mr. Redzepagic agrees to

not file an appeal or otherwise challenge the conviction or sentence in the event the Court imposes a term of imprisonment of 168 months or below.  The government is obviously not taking a position about what our sentencing recommendation would be, and the plea agreement is clear that the guidelines estimate is not binding and is ultimately determined by the sentencing court.

THE COURT:  All right, thank you.

Mr. Redzepagic, you just heard the prosecutor go over the waivers that are contained in this plea agreement.  I want to focus for a minute on the appellate waiver.  According to paragraph 4 in this agreement, it says that you are not going to file an appeal or otherwise challenge essentially your conviction or sentence in the event that Judge Hurley imposes a term of imprisonment of 168 months or below that number.  I want to make sure that you understand that specific provision in terms of any waiver of appeal.

First of all, do you understand or do you have any questions about that at all?

THE DEFENDANT:  No questions.  I understand.

THE COURT:  Let me just confirm for the record if you would, did you have a sufficient

opportunity to discuss that provision with Mr. Roche and/or Mr. Ahmad?

THE DEFENDANT: Yes, I did.

THE COURT: It's my understanding based on the contents of the plea agreement, Mr. Redzepagic, that intend now to plead guilty to Count 1 of the indictment, is that correct?

THE DEFENDANT: Yes.

THE COURT: Count 1 charges you with an attempt to provide material support to a foreign terrorist organization. I'm going to call upon Mr. McConnell once again if you would please to list the elements of the crime that's charged here in Count 1.

MR. McCONNELL: Yes, your Honor. The elements of this offense -- first, the defendant attempted to knowingly provide material or resources to a foreign terrorist organization. In this case, those resources were himself, the defendant, and to join a foreign terrorist organization per 18 USC 2339A(b)(1).

The second element is that the defendant knew that the organization was designated a terrorist organization or that the organization had engaged in terrorist activity or terrorism. The organization I believe the defendant is prepared to allocate to is Al Nusra Front, which is defined and designated a

terrorist organization pursuant the Secretary of State.

The third element is a jurisdictional requirement that can be satisfied in a number of ways. First, it can be satisfied by the fact that the defendant is a U.S. citizen, which he is, or that the defendant returned to the United States after the conduct occurred, which he did after this offense took place, and that the offense affected interstate or foreign commerce. Those are the elements, your Honor.

THE COURT: Thank you.

Mr. Redzepagic, you just heard the prosecutor outline the elements of the crime charged in Count 1. First of all, do you understand those elements?

THE DEFENDANT: Yes.

THE COURT: And for the record, have you had the opportunity to discuss this with Mr. Roche and/or Mr. Hassan (sic)?

THE DEFENDANT: Yes.

THE COURT: Excuse me, Mr. Ahmad, my apologies. Yes?

THE DEFENDANT: Yes.

THE COURT: I want to take a minute to go over the other terms in your plea agreement with you, all right? Do you have a copy of it there by any

chance?

THE DEFENDANT: No.

THE COURT: All right. But you have gone over it sufficiently, I think you already stated, with your attorneys, correct?

THE DEFENDANT: Yes.

THE COURT: All right. Under the statute that applies in these circumstances, the maximum term of imprisonment that Judge Hurley can impose here is up to 20 years.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And under the same statute, the minimum term of imprisonment is zero years.

Do you understand that as well?

THE DEFENDANT: Yes.

THE COURT: If Judge Hurley sentences you to a term of imprisonment, he's also obligated by statute to impose a period of supervised release. In this instance, the maximum period of supervised release is life, to follow any term of imprisonment. If you were to violate any condition of your supervised release, you could be sentenced to up to three years, without credit for prerelease imprisonment or time previously served on post-release supervision.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Also under the statute that applies here, the maximum fine that can be imposed by the Court is $250,000.

Do you understand that as well?

THE DEFENDANT:  Yes.

THE COURT:  And there is a $100 special assessment imposed here.  That is in the form of an order or a penalty charge that has to be paid.  It's really in the form of an administrative fee that has to be paid within the short term.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  There are certain other criminal forfeiture provisions set forth in the plea agreement.

Are you aware of those forfeiture provisions?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any questions about them?

THE DEFENDANT:  No.

THE COURT:  The plea agreement also contains, as Mr. McConnell told us earlier, information about the offense level and the federal sentencing

guidelines.  I want to make sure first of all that you've had the opportunity to discuss the federal sentencing guidelines with Mr. Roche and/or Mr. Ahmad.

THE DEFENDANT:  Yes.

THE COURT:  You also understand that the sentencing guidelines, the judge is required to review those, but he is not bound by the calculations that have been done that are contained in your plea agreement.

Do you understand that as well?

THE DEFENDANT:  Yes.

THE COURT:  Under a specific Supreme Court decision, the federal sentencing guideline range has been determined to be advisory and not mandatory.  What that means is that Judge Hurley is required to consider the federal sentencing guideline range but he's not compelled to sentence you within that range.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  After considering the federal sentencing guideline range, Judge Hurley is required to consider all the other factors in your case.  He has to consider for example the statutory reasons for sentencing.  Those include first of all the nature and circumstances of the offense here and the history and

characteristics of you as the defendant in this case. He also has to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.  He also has to consider the need to afford deterrence as to other criminal conduct and the need to protect the public from further crimes that you might commit.

Once Judge Hurley has considered the federal sentencing guideline range as well as all the other factors that I just went over with you, his job at that point is to determine a sentence that's reasonable, taking all of those factors and circumstances into account.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Redzepagic, do you understand that if the sentencing that Judge Hurley imposes here is more severe than what you might have expected, you will nonethtless be bound by your guilty plea and you will not be permitted to withdraw it.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any questions that you'd like to ask me about the charge, your rights, or

anything else relating to this matter?

THE DEFENDANT:  No.

THE COURT:  Are you ready to plead?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Roche, do you know of any legal reason why Mr. Redzepagic should not plead guilty?

MR. ROCHE:  I do not, your Honor.

THE COURT:  Mr. Redzepagic, are you satisfied with your legal representation up to this point?

THE DEFENDANT:  Yes.

THE COURT:  Do you feel that your attorneys have done a good job?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Redzepagic, what is your plea to Count 1 of the indictment, attempt to provide material support to a foreign terrorist organization?

THE DEFENDANT:  I plead guilty.

THE COURT:  Are you making this plea of guilty voluntarily and of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone threatened you or forced you in any way to get you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Other than the agreement with the government which I referred to earlier and that we marked as Court Exhibit 1, your plea agreement with the government, other than that agreement, has anyone made any promise that caused you to plead guilty here?

THE DEFENDANT:  No.

THE COURT:  Has anyone made any promise to you as to what your sentence will be?

THE DEFENDANT:  No.

THE COURT:  Mr. Redzepagic, did you as charged in Count 1, on or about and between June 2015 and August 2015, here in the Eastern District of New York and the extraterritorial jurisdiction of the United States, the defendant ELVIS REDZEPAGIC, together with others, did you knowingly and intentionally attempt to provide material support and resources, as defined in Title 18 of the United States Code, Section 2339A(b), including personnel, including yourself, to one or more foreign terrorist organizations, specifically: the Islamic State of Iraq and al-Sham (hereinafter referred to as "ISIS") and al-Nusrah Front, which at all relevant times have been designated by the Secretary of State as foreign terrorist organizations, knowing that the organizations were designated terrorist organizations and the

organizations had engaged in and were engaging in terrorist activity and terrorism, and that you were a national of the United States (as defined in section 101(a)(22) of the Immigration and Nationality Act), and after the conduct required for this offense occurred, you were found in the United States, the offense occurred in part within the United States, and the offense occurred in and affected interstate and foreign commerce.

Did you do that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Mr. Redzepagic, I will ask you now to describe in your own words what you did in connection with the acts that are charged in Count 1 of the indictment.

THE DEFENDANT:  I traveled to Turkey and attempted to enter through the Syrian border for the purpose of joining al-Nusrah Front at around June to August, 2015.

THE COURT:  All right.  Mr. McConnell, any questions or anything further you need?

MR. McCONNELL:  Yes, specifically the defendant -- if the defendant traveled Turkey in early July of 2015 with the intent of traveling to Syria to join the al-Nusrah Front.  I just want to confirm that

the date of the actual travel to Turkey was in July of 2015.

THE COURT:  Mr. Redzepagic, is that accurate?

THE DEFENDANT:  Yes.

THE COURT:  Okay.

MR. McCONNELL:  And just to confirm that after that, the defendant did return to the United States.

THE COURT:  Is that correct as well, Mr. Redzepagic?

THE DEFENDANT:  Yes.

THE COURT:  All right.  All right, very well, thank you.

Mr. McConnell, I'm going to ask you if you would now on behalf of the government outline the proof in this case if this case were to go to trial.

MR. McCONNELL:  Yes, your Honor.  Had the case proceeded to trial, the government's evidence would have included the following, all of which demonstrate the defendant's intent to enter Syria, join a terrorist organization, and wage a jihad.  Business records that we would introduce include airline, financial, and border-crossing records, specifically travel, hotel, and airline records which corroborate

his travel from Montenegro to Turkey, records of CBP interviews when the defendant returned from Turkey.

There was extremist propaganda that was found in his possession at the time he returned.  We would also introduce records from the defendant's social media accounts that reflect not only his violent ideology and his intent to join a terrorist organization but communications and information with like-minded individuals and confederates from a particular radical mosque in Montenegro.

We would also introduce evidence from the defendant's laptop computer, which evinced his criminal intent in attempting to cross the Syrian border from Turkey, which include a search history which show numerous visits to ISIS and other radical websites that provide instructions for travel to Syria, communications over a social media platform before and during the defendant's time in Turkey.

Additionally, the defendant made numerous statements to both law enforcement and third parties regarding his attempt to enter Syria and join this terrorist organization.  The government would call civilian witnesses to testify regarding the statements as well as law enforcement agents who would testify to the defendant's statements made in several interviews

with the FBI.

THE COURT:  All right, thank you.

Based on the information that's been provided to me, also by Assistant United States Attorney McConnell, I find that the defendant here is acting voluntarily, that he fully understands his rights and the consequences of his plea, and that there is indeed a factual basis for the plea.  I'm therefore recommending to Judge Hurley that the plea of guilty to Count 1 of the indictment be accepted.

Is there anything further from the government?

MR. McCONNELL:  No, your Honor.

THE COURT:  Mr. Roche and/or Mr. Ahmad, anything further on behalf of Mr. Redzepagic?

MR. ROCHE:  No, your Honor, thank you.

THE COURT:  Mr. Redzepagic, good luck to you.

We are concluded.  Thank you all.

* * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON                         September 7, 2021